UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| THE FEDERAL HOUSING FINANCE AGENCY, AS CONSERVATOR, | ) ) ) ) | |
| Petitioner, | ) ) ) | |
| v. | ) ) ) | Miscellaneous Case No. 11-00697 (RBW) |
| FIRST TENNESSEE BANK NATIONAL ASSOCIATION, | ) ) ) ) | |
| Respondent.[1] | ) ) ) | |

### MEMORANDUM OPINION

The petitioner in this case, the Federal Housing Finance Agency (the "FHFA"), acting in its capacity as conservator of the Federal National Mortgage Association, known as Fannie Mae, and the Federal Home Loan Mortgage Company, or Freddie Mac (collectively, the "Enterprises"), seeks to enforce two administrative subpoenas against the respondent, First Tennessee Bank National Association. See Conservator's Petition to Enforce Subpoenas Duces Tecum ("Pet.") at 1. The FHFA issued the administrative subpoenas pursuant to its statutory authority under the Housing and Economic Recovery Act of 2008 (the "Recovery Act"), 12 U.S.C. § 4617(b)(2)(I) (2006). Currently before the Court is the respondent's Motion to Transfer Venue to the Southern District of New York ("Resp.'s Mot."). Upon careful consideration of the

---

[1] Pursuant to the parties' stipulation of dismissal, see ECF No. 12, the Court has amended the case caption by omitting respondent First Horizon Home Loan Corporation as a party in this case.


parties' submissions,[2] the Court concludes for the following reasons that the respondent's motion must be granted.

## I. BACKGROUND

In July of 2008, Congress enacted the Recovery Act in response to the crisis in the housing and mortgage market.  See 12 U.S.C. § 4501.  The Recovery Act created the FHFA, id. § 4511, and grants the director of the FHFA conditional authority to place regulated entities, including the Enterprises, into conservatorship or receivership "for the purpose of reorganizing, rehabilitating, or winding up [their] affairs," id. § 4617(a).  Pursuant to this statutory authority, on September 6, 2008, the FHFA placed the Enterprises into conservatorship after they suffered considerable losses in residential mortgage-backed securities and other holdings.  Resp.'s Mem. at 2.

In its capacity as conservator for the Enterprises, the FHFA is "pursuing various strategies to collect monies due and owing to its [c]onservatees."  FHFA Opp'n at 1.  To that end, on July 8, 2010, the FHFA issued two administrative subpoenas duces tecum to the respondent, seeking production of, among other documents, "underwriting and servicing guidelines and loan origination files for the mortgage loans underlying six securitizations that the [respondent] had sponsored, underwritten or services and in which [the Enterprises] had invested."  Id. at 2.  Raising privacy concerns over third-party information contained in the

---

[2] In addition to the filings already identified, the Court considered the following submissions and supporting exhibits in rendering its decision: (1) the respondent's Memorandum of Law In Support of Respondent's Motion to Transfer Venue to the Southern District of New York ("Resp.'s Mem."); (2) the petitioner's Memorandum of Law in Opposition to Respondent's Motion to Transfer Venue to the Southern District of New York ("FHFA Opp'n"); (3) the respondent's Reply Memorandum of Law in Further Support of the Respondent's Motion to Transfer Venue to the Southern District of New York. ("Resp.'s Reply"); (4) the Declaration of Amanda F. Davidoff in Support of Respondent's Motion to Transfer Venue to the Southern District of New York ("Davidoff Decl."); (5) the Memorandum of Law in Support of the Conservator's Petition to Enforce Subpoenas Duces Tecum ("Pet. Mem."); (6) the respondent's Memorandum of Law in Opposition to FHFA's Petition to Enforce Subpoenas Duces Tecum ("Resp.'s Opp'n to Pet."); and (7) the Conservator's Reply in Further Support of its Petition to Enforce Subpoenas Duces Tecum ("Pet. Reply").

requested documents, the respondent sought to negotiate a confidentiality agreement, which was later executed on July 22, 2011.  Id.  Thereafter, on August 24, 2011, the respondent made an initial production of documents, which the FHFA maintains was inadequate.  Id.

On September 2, 2011, the FHFA brought a securities fraud action against the respondent and other defendants in the United States District Court for the Southern District of New York (the "Securities Action").  Resp.'s Mem., Exhibit ("Ex.") B (Complaint, FHFA v. First Horizon Nat'l Corp., Civ. No. 11-6193 (S.D.N.Y. Sep. 2, 2011)) at 1-2.  Five out of the six securitizations covered by the FHFA's subpoenas are at issue in the Securities Action.  Resp.'s Mem. at 3, n.4.  The FHFA has filed sixteen other, similar securities lawsuits that are also currently pending in the Southern District of New York.  Id. at 3.

After the FHFA filed the Securities Action, the respondent stopped producing documents responsive to the FHFA's subpoena.  Id. at 3; FHFA Opp'n at 3.  Noting the overlap between the securitizations at issue in the FHFA's subpoenas and the Securities Action, the respondent asserted that any production of documents would have to be sought pursuant to Federal Rule of Civil Procedure 34, and that all discovery, in any event, was stayed pursuant to the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 77z-1(b)(1) (2006).  See Resp.'s Mem. at 3.

On September 16, 2011, Judge Lewis A. Kaplan of the Southern District of New York entered an order that applied to all seventeen securities lawsuits filed by the FHFA, directing the parties to file a joint report addressing, among other things, "common issues with respect to discovery" raised by the cases.  Davidoff Decl., Ex. D (Order at 2, FHFA v. HSBC North America Holdings, Inc., Civ. No. 11-6189 (S.D.N.Y. Sep. 16, 2011)).  In response to this order, the FHFA requested that the court set "uniform standards for discovery across the [c]ases,

including provisions that no individual witness be deposed more than once, and that document discovery relevant to multiple [c]ases or parties be undertaken pursuant to a uniform set of requests and search terms." Davidoff Decl., Ex. E (FHFA's Proposal for the Efficient Administration of the Cases at 6, FHFA v. HSBC North America Holdings, Inc., Civ. No. 11-6189 (S.D.N.Y. Oct. 19, 2011)). The seventeen securities actions were then reassigned to Judge Denise Cote of the Southern District of New York on November 16, 2011. Davidoff Decl., Ex. G (Order at 4, FHFA v. UBS Americas, Inc., Civ. No. 11-5201 (S.D.N.Y. Nov. 16, 2011)).

At a hearing on December 2, 2011, Judge Cote decided to stay discovery pending her decision on a motion to dismiss in a test case selected from the seventeen securities actions. Davidoff Decl., Ex. H. (Hr'g Tr. at 21, 30-31, FHFA v. UBS Americas, Inc., Civ. No. 11-5201 (S.D.N.Y. Dec. 2, 2011)). She also ordered the parties to submit reports addressing, among other issues, "the sequencing of discovery, protective orders, e-discovery, the sampling of loan files, limits on depositions, and the timeframes regarding document production, depositions, and expert discovery." Davidoff Decl., Ex. J (Order at 5-6, FHFA v. UBS Americas, Inc., Civ. No. 11-5201 (S.D.N.Y. Dec. 5, 2011)). According to the respondent, the FHFA did not raise any issues regarding its issuance of subpoenas to the respondent at the December 2, 2011 hearing or thereafter until it filed this action on December 28, 2011. Resp.'s Mem. at 5.

In this action, the FHFA has filed a petition seeking to have this Court to enforce the subpoenas duces tecum it issued to the respondent. Pet. at 1. The FHFA has stated that it may use the subpoenaed information for several purposes, including: (1) to evaluate contractual claims against loan originators, to monitor servicer performance, and to pursue "other legal or equitable remedies," id. at 5-6; and (2) "in connection with . . . [the] investigation being conducted by [the] FHFA and any litigation or proceeding that arises from that inquiry," which

4

would include the Securities Action, id. at 14-15 (internal quotation marks and citation omitted). The respondent thereafter filed the instant motion on January 27, 2012, to transfer the FHFA's petition to the Southern District of New York pursuant to 28 U.S.C. § 1404(a).

## II.  STANDARD OF REVIEW

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  The statute "place[s] discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'"  Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (quoting Van Dusen v. Barrack, 376 U.S. 612, 622 (1964)).  "As a threshold requirement, the transferee court must be in a district where the action 'might have been brought.'"  Montgomery v. STG Intern., Inc., 532 F. Supp. 2d 29, 32 (D.D.C. 2008) (quoting 28 U.S.C. § 1404(a)).  If this requirement is satisfied, "then a court uses its broad discretion to balance case-specific factors related to the public interest of justice and the private interests of the parties and witnesses."  Id. (citing, among others, Stewart Org., 487 U.S. at 29-30).

## III.  ANALYSIS

Regarding the threshold question under § 1404(a), it is undisputed that this case could have been brought in the Southern District of New York.  Indeed, the Recovery Act provides that a conservator's subpoena may be enforced in any district "where the witness resides or conducts business."  12 U.S.C. § 4588(c).  And the FHFA has filed a securities action against the respondent, alleging that it does business in the Southern District of New York and is "subject to personal jurisdiction" there.  Davidoff Decl., Ex. B (Complaint ¶ 30, FHFA v. First Horizon National Corporation, Civ. No. 11-6193 (S.D.N.Y. Sept. 2, 2011)).  Thus, by the FHFA's own

admission, the Southern District of New York is a district where this action "might have been brought." 28 U.S.C. § 1404(a).

Proceeding to the next step of the § 1404(a) analysis, the respondent maintains that transferring this case to the Southern District of New York would serve the interests of justice, since Judge Cote of that court "is currently adjudicating a case filed by [the FHFA] against [the r]espondent in which [the FHFA] is seeking the same documents it seeks" in this case. Resp.'s Mot. at 1. The FHFA opposes transfer on the grounds that "Congress explicitly granted the [FHFA] the right to bring this action in the District of Columbia," FHFA Opp'n at 1, that there is no risk of inconsistent judgments, and that transfer would "delay justice, not serve it," id. at 8. The Court will first address the FHFA's statutory venue argument, and will then turn to the factors applicable to transfers under § 1404(a).

A.   The Effect of the Recovery Act's Special Venue Provision

The FHFA argues that its choice of venue should be upheld because Congress explicitly provided for venue in this Court for actions to enforce a conservator's subpoena under the Recovery Act. FHFA Opp'n at 5. Specifically, the Recovery Act provides that

> [t]he Director may bring an action or may request the Attorney General of the United States to bring an action in the United States district court for the judicial district in which such proceeding is being conducted, or where the witness resides or conducts business, or the United States District Court for the District of Columbia, for enforcement of any subpoena or subpoena duces tecum issued pursuant to this section.

12 U.S.C. § 4588(c). Noting that "judges in this district have uniformly denied motions to transfer venue . . . [in subpoena enforcement proceedings], particularly where a statute provides the court with jurisdiction and venue," the FHFA urges this Court to do the same in this case. FHFA Opp'n at 6.

6

While the contours of its argument are not entirely clear to the Court, the FHFA appears to be contending that the Recovery Act's express authorization of venue in this Court somehow alters the transfer analysis under § 1404(a). The Court disagrees with this position for several reasons. First, the District of Columbia Circuit has made clear that § 1404(a) "applies to actions governed by special venue provisions," SEC v. Savoy Indus., Inc., 587 F.2d 1149, 1153 (D.C. Cir. 1978), such as subpoena enforcement actions brought under the Recovery Act. Second, the fact that the Recovery Act permits venue in the District of Columbia does not mean that venue in this District is required or even preferable. In fact, in addition to this District, § 4588(c) of the Recovery Act provides for venue in the "district in which such proceeding is being conducted, or where the witness resides or conducts business." 12 U.S.C. § 4588(c). This venue provision expresses no preference for this Court over any other district falling within its purview. Third, nothing in § 4588 of the Recovery Act bars a court from transferring, pursuant to § 1404(a), a subpoena enforcement action. Cf. In re Nematron Corp. Sec. Litig., 30 F. Supp. 2d 397, 406 (S.D.N.Y. 1998) (noting that "a court's discretion under § 1404(a) is not circumscribed by the jurisdictional provisions of the [Securities Exchange Act of 1934] or the [Securities Act of 1933]"). The Court will therefore conduct the standard § 1404(a) analysis, giving the FHFA's choice of forum the deference it is customarily due, but no more.[3]

---

[3] The cases relied upon by the FHFA do not support its position that the Recovery Act's special venue provision affects the transfer analysis under § 1404(a). See FHFA Opp'n at 6-7. In Resolution Trust Corp. v. Koch, Misc. No. 93-003, 1993 WL 177736, at *2 n.1 (D.D.C. Feb. 17, 1993), the court summarily denied a motion to transfer in a footnote, noting only that the statute at issue, 12 U.S.C. § 1818(n), authorized venue in the District of Columbia, and that the movant had provided no reasons to justify a transfer. Two other cases cited by the FHFA, FHFA Opp'n at 6-7, simply found that transfer did not advance the convenience of the parties, see Resolution Trust Corp. v. McDougal, 158 F.R.D. 1, 1-2 (D.D.C. 1994) (noting that transfer would only cause delay and not analyzing the effect of a special statutory venue provision); United States ex rel. Bd. of Governors of Fed. Reserve Sys. v. Fortess (continued . . . )

7

**B.     Transfer Analysis Under § 1404(a)**

In balancing considerations of convenience and the interests of justice under § 1404(a), the Court must weigh both private and public interest factors. See Bederson v. United States, 756 F. Supp. 2d 38, 46 (D.D.C. 2010). Applied here, the Court concludes for the following reasons that the private and public interest factors weigh in favor of transferring this action to the Southern District of New York.

**1.     The Private Interest Factors**

The private interest factors include: "(1) the plaintiff's choice of forum; (2) the defendant's choice of forum; (3) where the claim arose; (4) the convenience of the parties; (5) the convenience of the witnesses; and (6) the ease of access to the sources of proof." Id. (citing Greene v. Nat'l Head Start Ass'n, 610 F. Supp. 2d 72, 74-75 (D.D.C. 2009)).

"When two potentially proper venues are proposed, the plaintiffs' choice of forum is frequently accorded deference, particularly where the plaintiffs have chosen their home forum and many of the relevant events occurred there." New Hope Power Co. v. U.S. Army Corps of Eng'rs, 724 F. Supp. 2d 90, 95 (D.D.C. 2010) (citation omitted). However, "where the chosen forum is not [the] plaintiff's home forum" or "where there is an insubstantial factual nexus between the case and the plaintiff's chosen forum, deference to the plaintiff's choice of forum is . . . weakened." Id. (citations omitted). Here, the Court finds that the FHFA's choice of forum is entitled to little deference. While it is true that, as a federal agency, the FHFA's "home forum" is the District of Columbia, the factual nexus between this case and the District of Columbia ends

---

(. . . continued)
Corp., Misc. No. 92-97, 1992 WL 82318, at *1 n.1 (D.D.C. Apr. 9, 1992) (summarily denying motion to transfer in footnote, and noting that a statute authorized venue in this District and that transfer was not more convenient). Lastly, in Office of Thrift Supervision, Dept. of Treasury v. Dobbs, Civ. No. 90-0029, 1990 WL 108965, at *2 (D.D.C. July 19, 1990), the court denied transfer because the movant made no showing that transfer served the interests of justice or convenience.

there. As the respondent points out, "[t]he facts underlying this proceeding are that the FHFA served subpoenas on First Horizon's registered agent in Dallas, Texas requesting that documents be produced to a vendor . . . in Jessup, Maryland." Resp.'s Reply at 7. Although FHFA officials in the District of Columbia presumably made the decision to issue the subpoenas, this Court has long recognized that "'[m]ere involvement . . . on the part of federal agencies, or some federal officials who are located in Washington, D.C. is not determinative' of whether the plaintiffs' choice of forum [in the District of Columbia] receives deference." New Hope Power, 724 F. Supp. 2d at 95-96 (quoting Stockbridge-Munsee Cmty. v. United States, 593 F. Supp. 2d 44, 47 (D.D.C. 2009)) (alterations in original) (collecting cases). Because "there is no real connection between the District of Columbia and this litigation other than the presence of federal agencies in this forum," Shawnee Tribe v. United States, 298 F. Supp. 2d 21, 26 (D.D.C. 2002), the Court accords little weight to the FHFA's choice of forum.

On the other hand, the forum where the respondent desires to have this matter litigated, the Southern District of New York, is entitled to some weight. It bears repeating that the FHFA chose to file a related securities action against the respondent in the Southern District of New York, and that five of the six securitizations that are the subject of the subpoenas in this case are also subjects of the Securities Action. See Resp.'s Mem. at 3, n.4. The existence of these parallel proceedings provides support for the respondent's choice of the Southern District of New York as the forum for the litigation of this case. See SEC v. Roberts, Civ. No. 07-407, 2007 WL 2007504, at *8 (D.D.C. July 10, 2007) (finding that the defendant's choice of forum carries weight when the government has filed two actions against the same defendant, "stemming out of exactly the same conduct," in different districts). The FHFA relies on United States v. Firestone Tire & Rubber Co., 455 F. Supp. 1072, 1077-78 (D.D.C. 1978), for the proposition that

9

the existence of a related action in another district does not justify the transfer of a summary enforcement proceeding under § 1404(a), FHFA Opp'n at 11.  But the court in Firestone merely held that transfer was inappropriate where the "conduct in th[e] case" pending in the transferee forum "ha[d] little to do with the summary enforcement proceeding" in the transferor court.  455 F. Supp. at 1075; see id. at 1078 (noting the lack of overlap between a suit for agency review of a published survey on tire performance and the agency's subpoena enforcement action in an ongoing investigation).  Here, by contrast, the nexus between the two proceedings is clear: documents produced in the instant subpoena enforcement proceeding will likely (if not certainly) be used in the Securities Action, despite Judge Cote's order temporarily staying discovery in that case.

Turning to the remaining private interest factors, there do not appear to be significant convenience interests at stake in this case.  Namely, because this is a summary proceeding seeking the enforcement of a subpoena, considerations such as the convenience of the parties and witnesses and access to proof are largely irrelevant to the transfer analysis.  See Resolution Trust Corp. v. Feffer, 795 F. Supp. 1223, 1224 (D.D.C. 1992) ("Because this is a summary proceeding with no witnesses or presentation of evidence, [the] respondents' arguments regarding convenience and efficiency have little force."); Firestone Tire & Rubber Co., 455 F. Supp. at 1078 (noting that "the importance of factors of convenience are reduced when the suit to be transferred is a summary enforcement proceeding," such as "[a] proceeding to enforce a subpoena" in which "discovery and testimony are not allowed").  Thus, the Court finds that the convenience factors favor neither jurisdiction.

### 2. The Public Interest Factors

"The public interest factors considered in a motion to transfer include: (1) the local interest in making local decisions regarding local controversies; (2) the relative congestion of the transferee and transferor courts; and (3) the potential transferee court's familiarity with the governing law." Bederson, 756 F. Supp. 2d at 46 (citing Greene, 610 F. Supp. 2d at 75). Another paramount consideration is "the compelling public interest in avoiding duplicative proceedings . . . and potentially inconsistent judgments." Reiffin v. Microsoft Corp., 104 F. Supp. 2d 48, 58 (D.D.C. 2000); accord FTC v. Cephalon, Inc., 551 F. Supp. 2d 21, 29 (D.D.C. 2008).

The first public interest factor is neutral because neither the transferor or transferee court has a discernible "local interest" in the instant subpoena enforcement action. The FHFA's subpoenas seek a variety of documents relating to six securitizations in which the respondent acted as the sponsor and seller and in which the Enterprises had invested and served as master servicers. Pet. Mem. at 6. Nothing in the record in this case suggests that either the District of Columbia or the Southern District of New York has any particular, localized interest in the FHFA's procurement of these documents.

The second public interest factor—the relative congestion of the transferee and transferor courts—weighs slightly against transfer. "'In this district, potential speed of resolution is examined by comparing the median filing times to disposition in the courts at issue.'" Spaeth v. Michigan State Uni. College of Law, __ F. Supp. __, __, 2012 WL 517162, at *8 (D.D.C. 2012) (quoting Pueblo v. Nat'l Indian Gaming Comm'n, 731 F. Supp. 2d 36, 40 n.2 (D.D.C. 2010)). According to the latest statistics concerning federal judicial caseloads, the median filing-to-disposition period in this District was 7.2 months, compared to 38.5 months in the Southern

District of New York. Federal Court Management Statistics September 2011, http://www.uscourts.gov/Statistics/FederalCourtManagementStatistics/DistrictCourtsSep2011.aspx. When taken out of context, the contrast between these two statistics is stark. However, upon closer inspection, the 38.5 month statistic appears to be an aberration for the Southern District of New York, inasmuch as that court's median filing-to-disposition periods for years 2006 through 2010 ranged from 6.4 to 9.8 months. Id. Comparing these more consistent statistics to the 7.2 month median filing-to-disposition period in this Court, the relative congestion of the Southern District of New York still weighs against transfer to that court, but not by much.

The third public interest factor—the transferee court's familiarity with the governing law—is neutral. "[A]ll federal courts are presumed to be equally familiar with the law governing federal statutory claims." Miller v. Insulation Contractors, Inc., 608 F. Supp. 2d 97, 103 (D.D.C. 2009) (citation omitted). Thus, neither venue is favored for adjudicating the FHFA's subpoena enforcement action brought under the Recovery Act. See id.

The most compelling public interest factor weighing in favor of transferring this action to the Southern District of New York is that the interests of justice would be served by avoiding "duplicative proceedings . . . and potentially inconsistent judgments." Reiffin, 104 F. Supp. 2d at 58. Judge Cote of the Southern District of New York is currently considering briefing from the parties concerning whether discovery in the Securities Action should be stayed pursuant to the PSLRA.[4] See Resp.'s Reply at 2; FHFA Opp'n at 9 n.7; see also 15 U.S.C. § 77z-1(b)(1) (provision of the PSLRA providing that "[i]n any private action arising under this subchapter, all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss").

---

[4] The parties, of course, disagree on whether Judge Cote will impose a PLSRA stay. Compare Resp.'s Mem. at 8, with FHFA Opp'n at 9-10 n.8. The Court need not, nor could it, express any opinion on this issue.

Meanwhile, if this Court retained the FHFA's subpoena enforcement action, it would be tasked with determining whether a PSLRA stay is in effect in the Securities Action, and, if so, whether that stay bars enforcement of the subpoenas in this case. See Resp.'s Opp'n to Pet. at 11-17; Pet. Reply at 6-10. The Court's finding on this issue would undoubtedly overlap, and possibly conflict, with Judge Cote's assessment of whether a PSLRA stay is in effect in the Securities Action. For instance, this Court hypothetically could find that enforcement of the subpoenas is barred by a PSLRA stay, while Judge Cote might conclude that no such stay is in place. Transferring this action to the Southern District of New York would avoid this potential result.

The FHFA maintains that "there is no risk of inconsistent judgments since a judge will still have to decide [its petition to enforce the subpoenas] regardless of any outcome in the . . . Securities Action." FHFA Opp'n at 9. This argument misses the mark. While it is true that some court will eventually be tasked with ruling on the FHFA's petition, it makes sense for one court to evaluate both that petition and the applicability of a PSLRA stay in the Securities Action due to the presence of overlapping issues. Accordingly, given the risk of inconsistent judgments attendant with retaining this case, the Court adheres to the principle that "[t]he interests of justice are better served when a case is transferred to the district where related actions are pending." Reiffin, 104 F. Supp. 2d at 56 (quoting Martin-Trigona v. Meister, 668 F. Supp. 1, 3 (D.D.C. 1987)); see also Barham v. UBS Fin. Servs., 496 F. Supp. 2d 174, 180 (D.D.C. 2007) ("[T]he most significant factor weighing in favor of transferring this case is the presence of closely related litigation."); Holland v. A.T. Massey Coal, 360 F. Supp. 2d 72, 77 (D.D.C. 2004) ("[T]he fact that there is an ongoing case dealing with similar issues in another jurisdiction weighs very heavily in favor of a transfer under § 1404(a).").

In addition, "[w]hile a transfer of this case would not be likely to result in the consolidation of this action with the [Securities Action], at a minimum such a transfer could facilitate the coordination of pretrial discovery." Comptroller of Currency v. Calhoun First Nat'l Bank, 626 F. Supp. 137, 141 (D.D.C. 1985); see also Wyndham Assocs. v. Bintliff, 398 F.2d 614, 619 (2d Cir. 1968) ("There is a strong policy favoring the litigation of related claims in the same tribunal in order that pretrial discovery can be conducted more efficiently."). As previously noted, the FHFA's subpoenas seek documents related to six securitizations, Pet. Mem. at 6, and in the Securities Action, the FHFA seeks documents related to five of those six securitizations, Resp.'s Mem. at 3, n.4. The FHFA, moreover, has not disputed the respondent's contention that the FHFA intends to use any relevant documents procured as a result of the subpoenas in the Securities Action. See Resp.'s Reply at 1; Pet. Reply at 10. Because discovery in the Securities Action involves complex issues relating to third-party privacy, the continuing effect of the parties' confidentiality agreement, and protocols for the production of documents, see Resp.'s Mem. at 8-10, and because those same issues may arise in connection with the subpoenas at issue in this action, the Court finds that judicial economy is best served by having this case resolved by the same forum charged with overseeing discovery in the Securities Action. That forum, of course, is the Southern District of New York.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that the § 1404(a) factors weigh in favor of transfer. Regarding the private interest factors, the FHFA's choice of forum is entitled to little weight, while the respondent's choice of forum is entitled to some weight in view of the Securities Action pending in the Southern District of New York. The remaining private interest factors are neutral. As to the public interest factors, the local interest in making local decisions

regarding local controversies and the potential transferee court's familiarity with the governing law are both neutral. And although the relative congestion of the transferee and transferor courts weighs slightly against transfer, the interests of justice weigh strongly in favor of transferring this case to the Southern District of New York in order to avoid duplicative and potentially inconsistent rulings, and, at least to some degree, to streamline pretrial discovery. Accordingly, the respondent's motion to transfer this action to the Southern District of New York is granted.

      **SO ORDERED** this 23rd day of April, 2012.[5]

                                    REGGIE B. WALTON
                                    United States District Judge

---

[5] The Court will contemporaneously issue an order consistent with this memorandum opinion.